In re ) Case No. _____

)

)

) **Notice of Motion for Relief**

) **From (Check All That Apply):**

) **Automatic Stay in a Chapter 7/13 Case**

) **Chapter 13 Codebtor Stay**

Debtor(s) )

1. **YOU ARE NOTIFIED** that a motion was filed by _____, the
   moving party, for (Check all that apply): <u>of The Lodge Series III Trust</u>

   Relief from the automatic stay protecting the debtor(s) and debtor's property, as provided by 11 U.S.C.
   § 362.

   Relief from the stay protecting the codebtor and codebtor's property as provided by 11 U.S.C. § 1301.
   Codebtor's name and service address are: _____

   _____.

2. A copy of the motion is attached. The name and service address of the moving party's attorney (or moving
   party, if no attorney) are: _____

   _____.

3. If you wish to resist the motion, you must, within 14 days of the service date shown below, file the following
   with the clerk at 1050 SW 6th Ave. #700, Portland OR 97204 or 405 E. 8th Ave. #2600, Eugene OR 97401:

   a. A written response that states the facts supporting the opposition to the motion by filling in the
      applicable "response" portions on a copy of the original motion. If the response will be electronically
      filed, the response must be prepared using the fillable pdf version of the original motion unless the
      motion was filed on paper and could not be electronically obtained from the movant; and

   b. A fully completed notice of hearing using Local Bankruptcy Form (LBF) 721, including the date and
      time of the hearing. Available hearing dates and times are posted at https://www.orb.uscourts.gov
      under the "Hearings" heading. If you do not have internet access, please call the court at (503) 326-
      1500 or (541) 431-4000 and press "0" to obtain the required forms and hearing information.

4. **<u>Failure to Object or Serve Proper Notice of Hearing</u>**. If you fail to file a timely response and notice of
   hearing, then the automatic stay may expire as to the debtor(s) pursuant to 11 U.S.C. § 362(e) and the stay
   protecting the codebtor may expire pursuant to 11 U.S.C. § 1301(d), or the court may sign an order
   without further notice, submitted by the moving party on LBF 720.90, granting relief from the debtor stay
   and/or codebtor stay.

I certify that:

(1)  The motion was prepared using the fillable PDF version of LBF 720.80; and

(2) On _____ this notice and the motion were served on the debtor(s), any codebtor at the address listed above, the trustee, the U.S. Trustee, members of any committee elected pursuant to 11 U.S.C. § 705, and their respective attorneys.

_____
Signature of Moving Party or Attorney                    (OSB#)

Case 17-32181-pcm13    Doc 39    Filed 09/03/19

## <u>SERVICE LIST</u>

| | |
|---|---|
| **Nick Lee Evans**<br>Kimberly Lorraine Evans<br>49700 Southeast Wildcat Mountain Drive<br>Sandy, OR 97055 | United States Trustee<br>Office of the U.S. Trustee<br>620 SW Main St #213<br>Portland, OR 97205 |
| **Wayne Godare**<br>222 SW Columbia St #1700<br>Portland, OR 97201 | **Todd Trierweiler**<br>4721 NE 102nd Ave<br>Portland, OR 97220 |
| **Bank of America**<br>POB 31785<br>Tampa, FL 33631-3785 | **Oregon Department of Revenue**<br>Bankruptcy Unit<br>955 Center Street NE #353<br>Salem, OR 97301-2555 |
| **Capital One Bank (USA) NA**<br>4851 Cox Road<br>Glen Allen, VA 23060 | |

1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re )  Case No._____
)
)  (*Check all applicable boxes*)
)    **Ch. 7/13 Motion for Relief from**
)      **Debtor     Chapter 13 Codebtor Stay**
)    Filed by Creditor:
)    _____
)    *Response to Stay Motion filed by Respondent:*
Debtor(s) )    _____
`*As Trustee Of The Lodge Series III Trust`

1. **Debt, Default, Other Encumbrances, Description and Value of Collateral** *(To be completed by creditor)*

   a. Description of collateral (car model, year, VIN, property address):

   b. Amount of debt: $_____ consisting of principal: $_____; interest: $_____;
      other:

   c. Description, amount and priority of other encumbrances on collateral. If not known, include applicable
      information from debtor's schedules if available on PACER:

      Total debt secured by collateral (total 1.b. + 1.c.): $_____.

   d. Value of collateral: $_____.
      Equity in collateral: $_____, after deducting $_____ liquidation costs.

   e. Current monthly payment: $_____.   `*Represents the current payment which is due on`
      `12/01/2017.`

   f. If Chapter 13:

      (1) $_____ postpetition default consisting of (e.g., $_____ payments, $_____
          late charges, $_____ fees):

      (2) $_____ prepetition default consisting of     amounts specified in proof of claim, or,
          consisting of:

   g. If Chapter 7, total amount of default $_____.

**720.80 (12/1/2018)**          Page 1 of 5
Case 17-32181-pcm13   Doc 39   Filed 09/03/19

***RESPONSE*** *(Identify specific items disputed and specify what you contend are the pertinent facts including why there is a postpetition default, if applicable) (to be completed by respondent):*

2.  **Relief from stay should be granted because (check all that apply):** *(To be completed by creditor)*

    Lack of adequate protection because of failure to make sufficient adequate protection payments and lack of a sufficient equity cushion.

    Lack of insurance on collateral.

    No equity in the collateral and the property is not necessary for an effective reorganization.

    Failure of debtor to make Chapter 13 plan payments to the trustee.

    Failure of debtor to make direct payments to secured creditor required by Chapter 13 plan.

    Other (describe):

***RESPONSE*** *(Specify why relief from stay should be denied. If respondent proposes to cure a postpetition default, detail the cure by attaching a proposed order using Local Form (LBF) 720.90 available at* [https://www.orb.uscourts.gov](https://www.orb.uscourts.gov) *under Forms/Local Forms) (to be completed by respondent):*

3.  **Background** *(To be completed by creditor)*

    a. Date petition filed: _____ Current Chapter: _____ (7 or 13)

    If 13, current plan date _____ Confirmed:     Yes     No

    If 13, treatment of creditor's prepetition claim(s) in plan:

    If 7, debtor     has     has not stated on Local Form (LBF) 521 or 521.05 that debtor intends to surrender the collateral.

    b. Creditor has a lien on the collateral by virtue of (check all applicable sections and also see paragraph 6 below):

    Security agreement, trust deed or land sale contract dated _____, and, if applicable, an assignment of said interest to creditor. The security interest was perfected as required by applicable law on_____.

Retail installment contract dated _____, and, if applicable, an assignment of said interest to creditor.  The security interest was perfected on the certificate of title on _____.
Other (describe):

*RESPONSE (Identify any disputed items and specify the pertinent facts) (to be completed by respondent):*

4. **Request for Relief from Codebtor Stay** (*Chapter 13 only*)
   a. _____, whose address is _____
   _____, is a codebtor on the obligation described above, but is not a debtor in this bankruptcy.

   b. Creditor should be granted relief from the codebtor stay because (check all applicable boxes):
      codebtor received the consideration for the claim held by creditor,      debtor's plan does not propose to pay creditor's claim in full,      creditor's interest would be irreparably harmed by continuation of the codebtor stay as a result of the default(s) described above and/or      because:

*RESPONSE (Identify any disputed items and specify the pertinent facts) (to be completed by respondent):*

5. **Other Pertinent Information** (To be completed by creditor, if applicable):

RESPONSE (Identify any disputed items and specify the pertinent facts) (to be completed by respondent):

6. **Relief Requested (check all applicable sections):** *(To be completed by creditor)*

Creditor requests relief from the automatic stay to allow it to foreclose its lien on the above identified collateral, and, if necessary, to take appropriate action to obtain possession of the collateral.

Creditor has a security interest in real property and requests relief from stay with respect to an act against such property and that the relief be binding in any other bankruptcy case purporting to affect such real property filed not later than 2 years after the date of the entry of an order granting this motion. (*If you check this box, you must complete paragraph 5 above to support this request. If you do not do so, the Court will not grant relief binding in any other bankruptcy case.*)

Creditor requests that the 14-day stay provided by FRBP 4001(a)(3) be waived based on the following cause:

Other (describe and explain cause):

**RESPONSE** (*Identify any disputed items and specify the pertinent facts. If respondent agrees to some relief, attach a proposed order using Local Bankruptcy Form (LBF) 720.90 available at https://www.orb.uscourts.gov under Forms/Local Forms) (to be completed by respondent):*

7. **Documents:**

**If creditor claims to be secured in paragraph 3.b. above** creditor has attached to and filed with this motion a copy of the documents creating and perfecting the security interest, if not previously attached to a proof of claim.

**If this case is a Chapter 13 case and the collateral as to which creditor seeks stay relief is real property,** creditor has attached to and filed with this motion a postpetition payment history current to a date not more than 30 days before this motion is filed, showing for each payment the amount due, the date the payment was received, the amount of the payment, and how creditor applied the payment.

**RESPONDENT requests creditor provide** Respondent with the following document(s), if any marked, which are pertinent to this response:

Postpetition payment history if not required above.

Documents establishing that creditor owns the debt described in paragraph 1 or is otherwise a proper party to bring this motion.

Other document(s) (specific description):

<u>Creditor/Attorney</u>

Signature:_____

Name:_____

Address:_____

_____

Email Address:_____

Phone No:_____

OSB#:_____

<u>Respondent Debtor/Attorney</u> *(by signing, the respondent also certifies that [s]he has not altered the information completed by creditor)*

Signature:_____

Name:_____

Address:_____

_____

Email Address:_____

Phone No:_____

OSB#:_____

<u>Respondent Codebtor/Attorney</u> *(by signing, the respondent also certifies that [s]he has not altered the information completed by creditor)*

Signature:_____

Name:_____

Address:_____

_____

Email Address:_____

Phone No:_____

OSB#:_____

*You are hereby notified that the creditor is attempting to collect a debt and any information obtained will be used for that purpose.*

# NOTE

**MIN #:**

<table>
<tr><td>[Date]</td><td>[City]</td><td>[State]</td></tr>
<tr><td>*MARCH 12, 2003*</td><td>*ENGLEWOOD,*</td><td>*COLORADO*</td></tr>
</table>

[Property Address]

*49700 SOUTHEAST WILDCAT MOUNTAIN DRIVE*
*SANDY, OR  97055*

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ *320,000.00*    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is *CAPITOL COMMERCE MORTGAGE CO., A CALIFORNIA CORPORATION*    . I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of *5.625*    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the *1st*   day of each month beginning on *MAY 1,* *2003*   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on *APRIL 1, 2033*     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at        *CAPITOL COMMERCE MORTGAGE CO.*
*7921 KINGSWOOD DR., SUITE A4*
or at a different place if required by the Note Holder. *CITRUS HEIGHTS, CA  95610*

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ *1,842.10*      .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

*12854 33840 C30-EF*                                                **LOAN NO:**
MULTISTATE FIXED RATE NOTE « Single Family « Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    01
OUT.DRAW.0101.MX.CVL.FIX.NOTE.1.WPF {opslas\mers20\notes\mxff3200}             *(page 1 of 3 pages)*



Exhibit 1
Case 17-32181-pcm13   Doc 39   Filed 09/03/19

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

---

12854 33840 C30-FF
MULTISTATE FIXED RATE NOTE « Single Family « Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
OUT.DRAW.0101.MX.CVL.FIX.NOTE.2.WPF (opsfas\mers20\notes\mxf13200)

LOAN NO: 1

(page 2 of 3 pages)

Exhibit 1
Case 17-32181-pcm13   Doc 39   Filed 09/03/19

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)       _____ (Seal)
KIMBERLY L EVANS          -Borrower       NICK L. EVANS          -Borrower

_____ (Seal)       _____ (Seal)
                          -Borrower                                 -Borrower

_____ (Seal)       _____ (Seal)
                          -Borrower                                 -Borrower

_____ (Seal)       _____ (Seal)
                          -Borrower                                 -Borrower

[Sign Original Only]

12854 33840 C30-EF                                          LOAN NO:
MULTISTATE FIXED RATE NOTE « Single Family « Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3200   1/01
OUT.DRAW.0101.MX.CVL.FIX.NOTE.3.WPF (opslas\mers20\notes\mxfl3200)                              (page 3 of 3 pages)

Exhibit 1

PAY TO THE ORDER OF COUNTRYWIDE HOME LOANS, INC.

WITHOUT RECOURSE
CAPITOL COMMERCE MORTGAGE CO.
A CALIFORNIA CORPORATION

MIKE BEATTY, Assistant Secretary

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.
BY

DANIEL SANTIAGO, ASST. SEC.

Exhibit 1

75
10
11
15P

Clackamas County Official Records
Sherry Hall, County Clerk

**2003-032175**

$96.00

0044548520030321750150154

03/17/2003 02:12:02 PM

M-TD          Cnt=1  Stn=3  BEVERLY
$75.00 $11.00 $10.00

Until a change is requested all tax statements
shall be sent to the following address:
*49700 SOUTHEAST WILDCAT MOUNTAIN
DRIVE, SANDY, OR 97055*

When Recorded Mail To:

*CAPITOL COMMERCE MORTGAGE CO.
P O BOX 276477
SACRAMENTO, CA 95827-6477
916-486-8900*

Loan No:
Parcel ID No:

[Space Above This Line For Recording Data]

Mortgage Electronic Registration Systems, Inc. (MERS) is the Grantee of this Security Instrument

# DEED OF TRUST

MIN:

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    *MARCH 12, 2003*                          ,
together with all Riders to this document.

(B) "Borrower" is    *KIMBERLY L. EVANS and NICK L. EVANS*

Borrower is the trustor under this Security Instrument.

(C) "Lender" is    *CAPITOL COMMERCE MORTGAGE CO., A CALIFORNIA CORPORATION*

Lender is a    *CORPORATION*     organized and existing under the laws of   *CALIFORNIA*
Lender's address is   *3600 AMERICAN RIVER DRIVE SUITE 150, SACRAMENTO, CA 95864*

(D) "Trustee" is    *Chicago Title Insurance Company
650 NE Holladay St., #125
Portland, OR 97232*

12854 33840 C30-FF                                                            LOAN NO:
OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                       Form 3038 1/01
DRAW.MERS.OR.CVL.DT.1.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)                                  *(page 1 of 14 pages)*

CHICAGO TITLE INSURANCE COMPANY

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P. O. Box 2026, Flint, Michigan 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated **MARCH 12, 2003** .
The Note states that Borrower owes Lender
**THREE HUNDRED TWENTY THOUSAND and NO/100-----** Dollars
(U.S. $ **320,000.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **APRIL 1, 2033** .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[   ] Adjustable Rate Rider     [   ] Condominium Rider     [   ] Second Home Rider
[   ] Balloon Rider     [   ] Planned Unit Development Rider     [   ] Other(s) [specify]
[   ] 1-4 Family Rider     [   ] Biweekly Payment Rider
[   ] V. A. Rider

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

*12854 33840 C30-FF*
OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS
DRAW.MERS.OR.CVL.DT.2.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)

LOAN NO: ▮▮▮▮
Form 3038 1/01
*(page 2 of 14 pages)*

2

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of *CLACKAMAS* :

*A LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF*

which currently has the address of *49700 SOUTHEAST WILDCAT MOUNTAIN DRIVE* [Street], *SANDY* [City], Oregon *97055* [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is

*12854 33840 C30-EF*                                                            LOAN NO: ▮▮▮▮▮▮
OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS          Form 3038 1/01
DRAW.MERS.OR.CVL.DT.3.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)                         (page 3 of 14 pages)

3

not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

12854 33840 C30-FF
OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS
DRAW.MERS.OR.CVL.DT.4.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)

LOAN NO: ███████

Form 3038 1/01
(page 4 of 14 pages)

4

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts

12854 33840 C30-FF

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS

DRAW.MERS.OR.CVL.DT.5.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)

LOAN NO:

Form 3038 1/01

(page 5 of 14 pages)



disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

*12854 33840 C30-FF*
OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS
DRAW.MERS.OR.CVL.DT.6.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)

LOAN NO: ▮▮▮▮▮

Form 3038 1/01
*(page 6 of 14 pages)*

6

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

*12854 33840 C30-FF*

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS
DRAW.MERS.OR.CVL.DT.7.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)

LOAN NO: ▮▮▮▮▮▮

Form 3038 1/01
*(page 7 of 14 pages)*

7

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has * if any * with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

*12854 33840 C30-FF*
OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS
DRAW.MERS.OR.CVL.DT.8.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)

*LOAN NO:* ▮▮▮▮

Form 3038 1/01
*(page 8 of 14 pages)*

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys'fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

*12854 33840 C30-FF*
OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS
DRAW.MERS.OR.CVL.DT.9.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)

LOAN NO: ███████

Form 3038 1/01
*(page 9 of 14 pages)*

9

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b ) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which

12854 33840 C30-EF
OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS
DRAW.MERS.OR.CVL.DT.10.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)

LOAN NO:
Form 3038 1/01
(page 10 of 14 pages)

then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

*12854 33840 C30-EF*                                                    LOAN NO: ▮▮▮▮▮
OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                 Form 3038 1/01
DRAW.MERS.OR.CVL.DT.11.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)                              *(page 11 of 14 pages)*

11

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Attorneys' Fees. As used in this Security Instrument and in the Note, attorneys' fees shall include those awarded by an appellate court.

12854 33840 C30-FF
OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS
DRAW.MERS.OR.CVL.DT.12.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)

LOAN NO: █████

Form 3038 1/01
(page 12 of 14 pages)

12

26. **Protective Advances.** This Security Instrument secures any advances Lender, at its discretion, may make under Section 9 of this Security Instrument to protect Lender's interest in the Property and rights under this Instrument.

27. **Required Evidence of Property Insurance.**

### WARNING

Unless you provide us with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage.

The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by Applicable Law.



THIS SPACE INTENTIONALLY LEFT BLANK

C30–FF ▮▮▮▮▮                                      LOAN NO: ▮▮▮▮▮
OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS            Form 3038 1/01
DRAW.MERS.OR.CVL.DT.13.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)                    *(page 13 of 14 pages)*

13

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
KIMBERLY L. EVANS          -Borrower          NICK L. EVANS          -Borrower

_____ (Seal)          _____ (Seal)
          -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
          -Borrower                                        -Borrower

STATE OF OREGON ,                    Multnomah County  ss:

On this   12   day of   March   . 2003   , personally appeared
KIMBERLY L. EVANS and NICK L. EVANS

and acknowledged the foregoing instrument to be their voluntary act and deed.

My Commission Expires: 04-14-03          Before me:
(Official Seal)

                                        _____
                                        Notary Public for Oregon

OFFICIAL SEAL
VICKI I SELLIN
NOTARY PUBLIC-OREGON
COMMISSION NO. 322533
MY COMMISSION EXPIRES APRIL 14, 2003

This Instrument Was Prepared By:
CAPITOL COMMERCE MORTGAGE CO.
DENVER - WHOLESALE
6143 SO. WILLOW DR. STE # 406
GREENWOOD VILLAGE, CO 80111

12854 33840 C30-EF
OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS
DRAW.MERS.OR.CVL.DT.14.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)

LOAN NO: ▮▮▮▮▮▮

Form 3038 1/01
(page 14 of 14 pages)

14

## LEGAL DESCRIPTION

A tract of land situated in the Southeast one-quarter of the
Northeast one-quarter and in the Northeast one-quarter of the
Southeast one-quarter of Section 2, Township 3 South, Range 5 East,
of the Willamette Meridian, in the County of Clackamas and State of
Oregon, being more particularly described as follows:

Beginning at the East one-quarter corner of said Section 2; thence
North 89°58'50" West a distance of 1314.51 feet to a point which
bears South 0°35'33" West a distance of 84.30 feet from the
Southwest corner of the Southeast one-quarter of the Northeast
one-quarter of said Section 2, said point being the Southwest
corner of that tract of land described as Parcel III in deed to
Edwin T. Cornwell and Iris S. Cornwell recorded April 22, 1975 as
Fee No. 75-9846, Clackamas County Deed Records; thence 0°35'33"
East a distance of 84.30 feet to the Southwest corner of the
Southeast one-quarter of the Northeast one-quarter of said Section
2; thence continuing North 0°35'33" East along the West line of
said legal subdivision a distance of 80.70 feet; thence South
29°58'50" East a distance of 1314.71 feet to a point in the East
line of said Section 2; thence South 0°39'31" West along said East
line a distance of 165.00 feet to the point of beginning.



Recording Requested By:
**Bank of America**
Prepared By: **Aida Duenas**
**888-603-9011**
When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

███████████████

Property Address:
**49700 SE WILDCAT MOUNTAIN DR**
**Sandy, OR 97055**
OR0-ADT ██████    4/26/2011



Clackamas County Official Records
Sherry Hall, County Clerk **2011-026999**

**$47.00**

0149337420110026999001 0014
05/05/2011 10:34:38 AM

M-TDA    Cnt=1 Stn=5 CONNIEBRO
$5.00 $16.00 $16.00 $10.00

This space for Recorder's use

MIN #: ███████          MERS Phone #:    888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 3300 S.W. 34TH AVENUE, SUITE 101 OCALA, FL 34474 does hereby grant, sell, assign, transfer and convey unto **BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME   LOANS SERVICING LP** whose address is **13150 WORLD GATE DR, HERNDON, VA 20170** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:         **CAPITOL COMMERCE MORTGAGE CO., A CALIFORNIA CORPORATION**
Original Borrower(s):    **KIMBERLY L. EVANS AND NICK L. EVANS**
Original Trustee:        **CHICAGO TITLE INSURANCE COMPANY**
Date of Deed of Trust: **3/12/2003**      Original Loan Amount: **$320,000.00**
Recorded in **Clackamas County, OR** on: **3/17/2003**, book **N/A**, page **N/A** and instrument number **2003-032175**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
*04/27/2011*

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

By: *Dominique Johnson*
**Dominique Johnson, Assistant Secretary**

State of **California**
County of **Ventura**

On *April 27th 2011* before me, **Deborah L. Beard**, Notary Public, personally appeared **Dominique Johnson**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

*Deborah L. Beard*                              (Seal)
Notary Public: Deborah L. Beard
My Commission Expires: 6/26/2013

DEBORAH L. BEARD
Commission # 1853913
Notary Public - California
Ventura County
My Comm. Expires Jun 26, 2013

Recording Requested By:
**Bank of America**
Prepared By: Danilo Cuenca
800-444-4302
When recorded mail to:
**Bank of America, N.A.**
**Document Processing Mail Code:TX2-979-**
**01-19 Attn:Assignment Unit**
**4500 Amon Carter Blvd.**
**Fort Worth, TX 76155**

Tax ID: ▓▓▓
Property Address:
**49700 SE WILDCAT MOUNTAIN DR**
**Sandy, OR 97055**
OR0-ADT▓▓▓▓E 10/4/2012

---

**Clackamas County Official Records**
**Sherry Hall, County Clerk**                    **2012-067740**

$48.00

01624136201200677400010010          10/16/2012 02:07:23 PM

-M-TDA      Cnt=1  Stn=5  CONNIEBRO
$5.00 $16.00 $17.00 $10.00

This space for Recorder's use

---

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1800 Tapo Canyon Road, Simi Valley, CA 93063** does hereby grant, sell, assign, transfer and convey unto **FEDERAL NATIONAL MORTGAGE ASSOCIATION** whose address is **14221 Dallas Parkway, Suite 100, Dallas, TX 75254** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:          **CAPITOL COMMERCE MORTGAGE CO., A CALIFORNIA CORPORATION**
Original Borrower(s):     **KIMBERLY L. EVANS AND NICK L. EVANS**
Original Trustee:         **CHICAGO TITLE INSURANCE COMPANY**
Date of Deed of Trust: **3/12/2003**      Original Loan Amount: **$320,000.00**

Recorded in Clackamas County, OR on: 3/17/2003, book N/A, page N/A and instrument number **2003-032175**

**Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc, 14523 SW Millikan Way #200, Beaverton, OR 97005, telephone # 1-866-570-5277, which is responsible for receiving payments.**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
__OCT 0 6 2012__

                                        Bank of America, N.A.

                                        By: _____
                                            Luis Roldan
                                            Assistant Vice President

State of California
County of **Ventura**

On __OCT 0 6 2012__ before me, _____ **Victoria Cook** _____, Notary Public, personally appeared
__Luis Roldan__
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

_____
Notary Public: _____ Victoria Cook
My Commission Expires: ___ 6/28/16

(Seal)

VICTORIA COOK
Commission # 1982192
Notary Public - California
Ventura County
My Comm. Expires Jun 28, 2016

| Clackamas County Official Records<br>Sherry Hall, County Clerk | **2018-056940** |
|---|---|
| | 09/14/2018 09:28:00 AM |
| M-TDA    Cnt=1 Stn=4 STEPHEN<br>$15.00 $16.00 $10.00 $62.00 | $103.00 |

Prepared By and Return To:
Paul Pugzlys
Collateral Department
Meridian Asset Services, Inc.
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

_____ Space above for Recorder's use _____

Loan
Svcr I
GS ID

### ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **FEDERAL NATIONAL MORTGAGE ASSOCIATION**, whose address is **13150 WORLDGATE DRIVE, HERNDON, VIRGINIA 20170**, (ASSIGNOR), does hereby grant, assign and transfer to **MTGLQ INVESTORS, L.P.**, whose address is **6011 CONNECTION DRIVE, IRVING, TX 75039**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: **3/12/2003**
Original Loan Amount: **$320,000.00**
Executed by (Borrower(s)): **KIMBERLY L. EVANS & NICK L. EVANS**
Original Trustee: **CHICAGO TITLE INSURANCE COMPANY**
Original Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CAPITOL COMMERCE MORTGAGE CO., A CALIFORNIA CORPORATION, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book **N/A**, Page **N/A**,
Document/Instrument No: **2003-032175** in the Recording District of **CLACKAMAS, OR**, Recorded on **3/17/2003**.

Legal Description: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **49700 SOUTHEAST WILDCAT MOUNTAIN DRIVE, SANDY, OREGON 97055**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _____8/29/17_____

**FEDERAL NATIONAL MORTGAGE ASSOCIATION, BY MERIDIAN ASSET SERVICES, INC., ITS ATTORNEY-IN-FACT**

By: **JOSEPH DAY**
Title: **ASSISTANT VICE PRESIDENT**

Witness Name: **INGYR RUSSELL**

FNMA NPL6

Exhibit 3

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of **FLORIDA**
County of **PINELLAS**

On ___8|29|17___ , before me, **MARTHA J. NUNN**, a Notary Public, personally appeared **JOSEPH DAY, ASSISTANT VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, INC., AS ATTORNEY-IN-FACT FOR FEDERAL NATIONAL MORTGAGE ASSOCIATION**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify JOSEPH DAY, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

_____

(Notary Name) **MARTHA J. NUNN**
My commission expires: **7/13/2021**

MARTHA J NUNN
Commission # GG 124160
Expires July 13, 2021
Bonded Thru Budget Notary Services

FNMA NPL6

Exhibit 3

## EXHIBIT "A"

A tract of land situated in the Southeast one-quarter of the Northeast one-quarter and in the Northeast one-quarter of the Southeast one-quarter of Section 2, Township 3 South, Range 5 East, of the Willamette Meridian, in the County of Clackamas and State of Oregon, being more particularly described as follows:

Beginning at the East one-quarter corner of said Section 2; thence North 89°58'50" West a distance of 1314.51 feet to a point which bears South 0°35'33" West a distance of 84.30 feet from the Southwest corner of the Southeast one-quarter of the Northeast one-quarter of said Section 2, said point being the Southwest corner of that tract of land described as Parcel III in deed to Edwin T. Cornwell and Iris S. Cornwell recorded April 22, 1975 as Fee No. 75-9846, Clackamas County Deed Records; thence 0°35'33" East a distance of 84.30 feet to the Southwest corner of the Southeast one-quarter of the Northeast one-quarter of said Section 2; thence continuing North 0°35'33" East along the West line of said legal subdivision a distance of 80.70 feet; thence South 29°58'50" East a distance of 1314.71 feet to a point in the East line of said Section 2; thence South 0°39'31" West along said East line a distance of 165.00 feet to the point of beginning.

FNMA NPL6

Exhibit 3

Case 17-32181-pcm13   Doc 39   Filed 09/03/19

| Clackamas County Official Records | **2018-074734** |
| Sherry Hall, County Clerk | 12/13/2018 01:06:03 PM |
| M-TDA    Cnt=1 Stn=4 STEPHEN | |
| $15.00 $16.00 $10.00 $62.00 | $103.00 |

Prepared By and Return To:
Kathleen Collins
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

_____ Space above for Recorder's use _____

Loan No ▉
Svcr Ln ▉
GS ID: ▉

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **MTGLQ INVESTORS, L.P.**, whose address is **2001 ROSS AVENUE SUITE 2800, DALLAS, TEXAS 75201**, (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES III TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: 3/12/2003
Original Loan Amount: **$320,000.00**
Executed by (Borrower(s)): **KIMBERLY L. EVANS & NICK L. EVANS**
Original Trustee: **CHICAGO TITLE INSURANCE COMPANY**
Original Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CAPITOL COMMERCE MORTGAGE CO., A CALIFORNIA CORPORATION, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book N/A, Page N/A,
Document/Instrument No: 2003-032175 in the Recording District of **CLACKAMAS, OR**, Recorded on 3/17/2003.

Legal Description: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **49700 SOUTHEAST WILDCAT MOUNTAIN DRIVE, SANDY, OREGON 97055**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **NOV 2 7 2018**

**MTGLQ INVESTORS, L.P.**

By: **ANDREA RHINEHARDT**
Title: **VICE PRESIDENT**

Witness Name: Jim Reust

▉ FNMA NPL6 ▉

Exhibit 3
Case 17-32181-pcm13   Doc 39   Filed 09/03/19

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of     **TEXAS**
County of    **DALLAS**

On **NOV 2 7 2018** , before me, **E'meraude A. Rash** , a Notary Public, personally appeared **ANDREA RHINEHARDT, VICE PRESIDENT** of/for **MTGLQ INVESTORS, L.P.**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **TEXAS** that the foregoing paragraph is true and correct. I further certify ANDREA RHINEHARDT, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **E'meraude A. Rash**
My commission expires **NOV 1 8 2019**

E'MERAUDE A. RASH
Notary Public State of Texas
My Commission # 130444321
My Comm. Exp. November 18, 2019

FNMA NPL6

Exhibit 3
Case 17-32181-pcm13   Doc 39   Filed 09/03/19

EXHIBIT "A"


A tract of land situated in the Southeast one-quarter of the
Northeast one-quarter and in the Northeast one-quarter of the
Southeast one-quarter of Section 2, Township 3 South, Range 5 East,
of the Willamette Meridian, in the County of Clackamas and State of
Oregon, being more particularly described as follows:

Beginning at the East one-quarter corner of said Section 2; thence
North 89°58'50" West a distance of 1314.51 feet to a point which
bears South 0°35'33" West a distance of 84.30 feet from the
Southwest corner of the Southeast one-quarter of the Northeast
one-quarter of said Section 2, said point being the Southwest
corner of that tract of land described as Parcel III in deed to
Edwin T. Cornwell and Iris S. Cornwell recorded April 22, 1975 as
Fee No. 75-9846, Clackamas County Deed Records; thence 0°35'33"
East a distance of 84.30 feet to the Southwest corner of the
Southeast one-quarter of the Northeast one-quarter of said Section
2; thence continuing North 0°35'33" East along the West line of
said legal subdivision a distance of 80.70 feet; thence South
29°58'50" East a distance of 1314.71 feet to a point in the East
line of said Section 2; thence South 0°39'31" West along said East
line a distance of 165.00 feet to the point of beginning.

FNMA NPL6

| Clackamas County Official Records | **2019-020310** |
|---|---|
| Sherry Hall, County Clerk | 04/18/2019 08:43:03 AM |
| M-TDA          Cnt=1 Stn=9 COUNTER1 | |
| $15.00 $16.00 $10.00 $62.00 | **$103.00** |

Prepared By and Return To:
Kathleen Collins
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

_____ Space above for Recorder's use _____

Loan No: ▮▮▮▮▮

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET SERIES III TRUST**, whose address is 7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251, (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE LODGE SERIES III TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: 3/12/2003
Original Loan Amount: $320,000.00
Executed by (Borrower(s)): **KIMBERLY L. EVANS & NICK L. EVANS**
Original Trustee: **CHICAGO TITLE INSURANCE COMPANY**
Original Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CAPITOL COMMERCE MORTGAGE CO., A CALIFORNIA CORPORATION, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book N/A, Page N/A,
Document/Instrument No: **2003-032175** in the Recording District of **CLACKAMAS, OR**, Recorded on **3/17/2003**.

Legal Description: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **49700 SOUTHEAST WILDCAT MOUNTAIN DRIVE, SANDY, OREGON 97055**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **MAR 2 6 2019**

**US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET SERIES III TRUST, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: **CHRISTOPHER CARPENTER**
Title: **VICE PRESIDENT**

Witness Name: **ANTHONY RUSCITO**

▮▮▮GS_July18 ▮▮▮

Exhibit 3
Case 17-32181-pcm13   Doc 39   Filed 09/03/19

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF
THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE
TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of      **FLORIDA**
County of    **PINELLAS**

On **MAR 2 6 2019**          , before me, **VERONIQUE J. SIMS**, a Notary Public, personally
appeared **CHRISTOPHER CARPENTER, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC,
AS ATTORNEY-IN-FACT FOR US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF
CHALET SERIES III TRUST**, personally known to me, or who proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify
under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and
correct. I further certify CHRISTOPHER CARPENTER, signed, sealed, attested and delivered this document as a
voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **VERONIQUE J. SIMS**
My commission expires: **01/21/2022**

VERONIQUE J SIMS
Commission # GG 177066
Expires January 21, 2022
Bonded Thru Budget Notary Services

GS_July18

Exhibit 3

## EXHIBIT "A"

A tract of land situated in the Southeast one-quarter of the Northeast one-quarter and in the Northeast one-quarter of the Southeast one-quarter of Section 2, Township 3 South, Range 5 East, of the Willamette Meridian, in the County of Clackamas and State of Oregon, being more particularly described as follows:

Beginning at the East one-quarter corner of said Section 2; thence North 89°58'50" West a distance of 1314.51 feet to a point which bears South 0°35'33" West a distance of 84.30 feet from the Southwest corner of the Southeast one-quarter of the Northeast one-quarter of said Section 2, said point being the Southwest corner of that tract of land described as Parcel III in deed to Edwin T. Cornwell and Iris S. Cornwell recorded April 22, 1975 as Fee No. 75-9846, Clackamas County Deed Records; thence 0°35'33" East a distance of 84.30 feet to the Southwest corner of the Southeast one-quarter of the Northeast one-quarter of said Section 2; thence continuing North 0°35'33" East along the West line of said legal subdivision a distance of 80.70 feet; thence South 29°58'50" East a distance of 1314.71 feet to a point in the East line of said Section 2; thence South 0°39'31" West along said East line a distance of 165.00 feet to the point of beginning.

███████ GS_July18 █████

Exhibit 3
Case 17-32181-pcm13   Doc 39   Filed 09/03/19

| Date rec'd | Days | Date Due/ Description | Total Paid | P&I Amount Posted |
|---|---|---|---|---|
| | | Evans, Kimberly | | |
| | | ▇ | | |
| | | | | |
| 06/09/17 | | BK FILE DATE | | |
| | | | | |
| | | Post-Pet Due: 12/01/2017 | 0.00 | 0.00 |
| | | | | 0.00 |
| | | POST-PETITION PAYMENTS OWED | | 0.00 |
| | | | | 0.00 |
| | | 12/01/2017 | 1,637.10 | 0.00 |
| | | 01/01/2018 | 1,637.10 | 0.00 |
| | | 02/01/2018 | 1,637.10 | 0.00 |
| | | 03/01/2018 | 1,637.10 | 0.00 |
| | | 04/01/2018 | 1,637.10 | 0.00 |
| | | 05/01/2018 | 1,637.10 | 0.00 |
| | | 06/01/2018 | 1,637.10 | 0.00 |
| | | 07/01/2018 | 1,637.10 | 0.00 |
| | | 08/01/2018 | 1,637.10 | 0.00 |
| | | 09/01/2018 | 1,637.10 | 0.00 |
| | | 10/01/2018 | 1,637.10 | 0.00 |
| | | 11/01/2018 | 1,637.10 | 0.00 |
| | | 12/01/2018 | 1,637.10 | 0.00 |
| | | 01/01/2019 | 1,637.10 | 0.00 |
| | | 02/01/2019 | 1,637.10 | 0.00 |
| | | 03/01/2019 | 1,637.10 | 0.00 |
| | | 04/01/2019 | 1,637.10 | 0.00 |
| | | 05/01/2019 | 1,637.10 | 0.00 |
| | | 06/01/2019 | 1,637.10 | 0.00 |
| | | 07/01/2019 | 1,637.10 | 0.00 |
| | | 08/01/2019 | 1,637.10 | 0.00 |
| | | 09/01/2019 | 1,637.10 | 0.00 |
| | | | | 0.00 |
| | | TOTAL PITI PMTS OWED | 36,016.20 | 0.00 |
| | | LATE CHARGES OWED | 480.08 | 0.00 |
| | | | | 0.00 |

Exhibit 4

Case 17-32181-pcm13  Doc 39  Filed 09/03/19



# SERVICING CORPORATION

**323 FIFTH STREET (95501)**
**P.O. BOX 35**
**EUREKA, CA  95502**
**(800) 603-0836**

August 23, 2019

KIMBERLY L EVANS
49700 SE WILDCAT MOUNTAIN DR
SANDY, OR 97055
Your Reference:

Re:      ███████
         KIMBERLY L EVANS
         49700 SOUTHEAST WILDCAT MOUNTAIN DRIVE
         SANDY, OR 97055

Pay off figures for the above referenced loan/borrower are:

| | |
|---|---|
| Projected Payoff Date | 09/06/2019 |
| Principal Balance | $258,905.22 |
| Interest to 09/06/2019 | $73,007.81 |
| Other (See Attached Detail) | $46,502.96 |
| Prepayment Penalty | $0.00 |
| Funds owed by Borrower | $28,746.59 |
| Funds owed to Borrower | $0.00 |
| Total Payoff | $407,162.58 |
| Per diem | $ 32.81 |

The next payment due is 09/01/2013.  The current interest rate is    4.625   % and the P&I payment is $1,200.20.

**PAY OFF INSTRUCTIONS/INFORMATION:**
- Pay off figures are subject to change so please call **800-603-0836** to update these figures prior to remitting funds.
- Funds received after 12:00 noon will be processed on the next business day and interest will be charged through that date.
- All pay off figures are subject to clearance of funds in transit.  The pay off is subject to final audit when presented.
- Please provide the borrower's forwarding address so any overpayment or refund can be directly mailed to the borrower.
- We will prepare the release of our interest in the property after all funds have cleared.

**REMITTANCE INFORMATION:**

**Make checks payable to:**      Lodge Series III

**Mailing Address:**                                    **Express/Overnight Mail Address:**

SN Servicing Corporation                     **Bank of Texas**
Lodge Series III                                    **c/o Remittance Services, Dept 41548**
PO BOX 660820                                  **2250 W State Hwy 114**
DALLAS, TX 75266-0820                      **Grapevine, TX 76051**

**Wiring Instructions:**

Lodge Series III, Bank of Texas, ACCT ████████ , ABA # ████████

Exhibit 5
Case 17-32181-pcm13   Doc 39   Filed 09/03/19



## PAYOFF DETAIL

| DESCRIPTION OF OTHER | | AMOUNT |
|---|---|---|
| LATE CHARGES | | $480.08 |
| ATTORNEYS FEES | | $0.00 |
| FORECLOSURE EXPENSES | | $0.00 |
| LEGAL EXPENSES | | $0.00 |
| LEGAL BILLING | | $0.00 |
| FORCE PLACE INSURANCE | | $0.00 |
| FORCE PLACE FLOOD | | $0.00 |
| INTERIM CORPORATE ADVANCE | | $0.00 |
| ARREARAGE PRINCIPAL | | $0.00 |
| ARREARAGE INTEREST | | $0.00 |
| ARREARAGE ESCROW | | $0.00 |
| APO OTHER | | $0.00 |
| APO ESCROW | | $0.00 |
| APO INTEREST | | $0.00 |
| APO PRINCIPAL | | $0.00 |
| PRIOR SERVICER LATE CHARGES | | $60.01 |
| PRIOR SERVICER CORPORATE ADVANCE | | $10,527.27 |
| 3RD PARTY PRIOR SERVICER CORPORATE ADV | | $0.00 |
| FORBEARANCE PRINCIPAL | | $35,435.60 |
| FORBEARANCE INTEREST | | $0.00 |
| FORBEARANCE LATE | | $0.00 |
| FORBEARANCE OTHER | | $0.00 |
| FORBEARANCE FORCE PLACE INSURANCE | | $0.00 |
| FORBEARANCE ESCROW | | $0.00 |
| FORBEARANCE LEGAL FEE | | $0.00 |
| APPRAISAL/BPO | | $0.00 |
| NSF FEES | | $0.00 |
| PROPERTY TAXES CURRENT | | $0.00 |
| PROPERTY TAXES DELINQUENT | | $0.00 |
| ELECTRONIC PAYMENT FEE | | $0.00 |
| MISC FEES | | $0.00 |
| PROPERTY INSPECTIONS | | $0.00 |
| VERIFICATION OF MORTGAGE | | $0.00 |
| PRIOR FAX | | $0.00 |
| PRIOR RUSH | | $0.00 |
| PRIOR PAYOFF PROCESSING FEES | | $0.00 |
| DEFERRED PRINCIPAL | | $0.00 |
| | $46,502.96 | TOTAL |

**FUNDS OWED FROM BORROWER**

| | DESCRIPTION | AMOUNT |
|---|---|---|
| PREPAYMENT PENALTY | | $0.00 |
| ASSISTANCE ADVANCE | | $0.00 |
| ASSISTANCE ADVANCE | | $0.00 |
| ESCROW ADVANCE | Short Payment | $0.00 |
| ESCROW ADVANCE | Taxes / PMI / Insurance | $28,746.59 |
| | $28,746.59 | TOTAL |

**FUNDS OWED TO BORROWER**

| | DESCRIPTION | AMOUNT |
|---|---|---|
| UNAPPLIED | | $0.00 |
| ESCROW | Balance to be refunded to Borrower at Payoff | $0.00 |
| INTEREST ON ESCROW | | $0.00 |
| INTERST ON LOSS DRAFT | | $0.00 |
| LOSS DRAFT | | $0.00 |
| | $0.00 | TOTAL |

Exhibit 5